CHRYSLER BUILDING
405 LEXINGTON AVE., 26TH FLOOR
NEW YORK. NY 10174
212-354-0025
FAX: 212-869-0067

TL@TISDALE-LAW.COM



# TISDALE & NAST
## LAW OFFICES, LLC

10 SPRUCE STREET
SOUTHPORT. CT 06890
203-254-8474
FAX: 203-254-1641

WWW.TISDALE-LAW.COM

March 31, 2026

**Via ECF**
Hon. Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:   **Pre-Motion Letter to File a Motion to Stay Plaintiff's Complaint pending FMC Determination.**
> **Zim Integrated Shipping Services, Ltd. v. TD Logistics, Inc.**
> **1:25-cv-9492-AT**

Dear Judge Torres:

We are counsel for Defendant TD Logistics, Inc. ("TD"). Pursuant to your Honor's Individual Rules, this is a pre-motion letter regarding TD Logistics' intent to file a Motion to Stay these proceedings. The parties exchanged private pre-motion letters pursuant to your Honor's Individual Rule "Special Rules for Motions to Dismiss." The parties were unable to resolve the issues presented in the letters. Undersigned also reached out to counsel for the Plaintiff requesting if Plaintiff would consent to staying this action while the underlying issues were solved by the Federal Maritime Commission ("FMC"). Plaintiff rejected this offer.

This action was brought by Plaintiff, Zim Integrated Shipping Services, Ltd. ("Zim"), alleging unpaid demurrage charges for several shipping containers seeking damages of $7 million. Zim's Complaint alleges a breach of contract claim and a quantum meruit claim.

TD is not the proper party against which this action can be brought. TD was not the contractual party to Zim and acted only as a notify party/destination agent for the transactions described in Plaintiff's Complaint. As Zim is a vessel operating "ocean common carrier" as that term is defined by 46 U.S.C. § 40102(7) and (18), it is subject to regulation by the FMC. TD is also subject to FMC regulation because it is an FMC licensed Non-Vessel Operating Common Carrier ("NVOCC"), as defined under the Shipping Act, and operating under FMC Organization and OTI License No. 034143. The proper party to who this action may be brought against is the "ultimate consignee" as defined by the FMC at 46 CFR 541.3. Zim is aware of the party with this designation. The ultimate consignee contacted Zim to be substituted as the defendant in this action. Zim, for reasons unknown, rejected this proposal, and proceeded against TD.

46 CFR Part 541 governs demurrage and detention ("D&D") billing requirements and practices, and its primary purpose is meant to stop D&D invoices from being sent to parties who did not negotiate contract terms with the billing party. TD did not contract with Zim or request its

transportation services. TD's role was solely limited, as a destination agent, to issuing an Arrival Notice to the ultimate consignee, on behalf of Zim's shipper and service contract party. While TD was listed as a "consignee" under the bills of lading, it was not the "ultimate consignee" responsible for the subject invoices as the FMC defines "Consignee" at 46 CFR 541.3 and 46 CFR 520.2.

Under 46 U.S.C. § 41302(a), the FMC is empowered to investigate any conduct, fee, or charge that the FMC believes to be in violation of the Shipping Act of 1984, as amended, 46 U.S.C. §§ 40101-41310 (Shipping Act). As Zim is aware, in June 2022, the Ocean Shipping Reform Act of 2022 ("OSRA 2022") amended the Shipping Act of 1984, setting forth a new federal provision to challenge D&D charges entitled "Charge Complaint." These amended provisions delegated to and authorized the FMC to promptly investigate "information concerning complaints about demurrage and detention charges assessed by a common carrier," 46 U.S.C. §§ 41310(a)-(b). If the FMC determines that a charge does not comply with §§ 41104(a) or 41102, the FMC shall, under 46 U.S.C. § 41310(c), "promptly" order the refund of charges paid or waiver of charges assessed. If the FMC determines that a charge does not comply with §§ 41104(a) or 41102, the FMC also is authorized under 46 U.S.C. § 41310(d) to issue a civil penalty under 46 U.S.C. §§ 41107 and 41109 to the common carrier making such charge.

Under OSRA 2022, the FMC must determine whether Zim's invoices were proper and if it correctly followed the detention and demurrage billing practices developed by the FMC over a multi-year-long process, as prescribed by Congress. See Demurrage and Detention Billing Requirements, 89 Fed. Reg. 14330, 14330-31 (Feb. 26, 2024). TD avers that Zim flagrantly violated FMC regulations at Part 541 by not providing an additional 30 days to allow the ultimate consignee to continue to dispute Zim's D&D charges and filed the SDNY complaint instead. See 46 CFR 541.7 (c)-(d). Zim's disregard for the regulatory process and suit against TD constitutes a Shipping Act violation because it was in retaliation against TD under 46 U.S.C. § 41102(d)(2) (B).

Under OSRA, TD, is allowed to file a Charge Complaint against Zim pursuant to 46 U.S.C. §41310 and §41101(e) (NVOCC Safe Harbor) and allege violations of 46 U.S.C. §§ 41104(a) or 41102. TD will argue that Zim knowingly ignored the FMC's definition of "Consignee," which is defined as the "ultimate recipient of the cargo; the person to whom final delivery of the cargo is to be made." 46 CFR 541.3. TD's Charge Complaint procedures require an FMC investigation to determine if Zim violated the alleged provisions of the Shipping Act. Zim will be given an opportunity to respond to the allegations of the Charge Complaint and has the burden of proving that its charges and invoices for D&D were following FMC laws and regulations. The same subject matter before this Court (Zim's $7 million demurrage claim) will be the same subject matter of TD's Charge Complaint it intends to file against Zim before the FMC, as required by OSRA 2022.

TD is in the process of filing a Charge Complaint at the FMC citing Zim's multiple violations of the Shipping Act. This Charge Complaint is expected to be filed within 10 days of the date of this later. The Charge Complaint will allege Zim knowingly ignored the FMC's definition of "Consignee," which is defined as "ultimate recipient of the cargo; the person to whom final delivery of the cargo is to be made." 46 CFR 541.3. TD's Charge Complaint procedures require an FMC investigation to determine if Zim violated the alleged provisions of the Shipping

Act. Congress granted the FMC exclusive power to enforce the Shipping Act. 46 U.S.C. § 41301; *Federal Maritime Com. v. New York Terminal Conference*, 262 F. Supp. 225, 228 (S.D.N.Y. 1966). Furthermore, based upon information and belief, the ultimate consignee is also preparing to file a Formal Complaint at the FMC against Zim. This action cannot continue until the FMC has made the determinations as mentioned above.

The FMC has stated that merely listing the consignee on a bill of lading is not sufficient to support billing the consignee. Therefore, a determination by the FMC as to whether TD is the correctly billed party must also be made. Congress granted the FMC exclusive power to enforce the Shipping Act. 46 U.S.C. § 41301; *Federal Maritime Com. v. New York Terminal Conference*, 262 F. Supp. 225, 228 (S.D.N.Y. 1966). The FMC has stated it holds "the proper and exclusive forum" for asserting demurrage charge disputes under the Shipping Act is before the FMC. *See Samsung Electronics America, Inc. v. Orient Overseas Container Line Limited et al.*, 2025 FMC LEXIS 250, *7 (Mar. 31, 2025); FMC Docket No. 24-17.

A stay is appropriate in this action to await an FMC determination of TD's Charge Complaint. A stay is a mechanism of judicial discretion where its issuance turns upon the circumstances of each case. *Nken v. Holder*, 556 U.S. 418, 433 (U.S., 2009). TD bears the burden of showing the circumstances justifying the exercise of granting a stay. *Id.* Courts look at four factors when determining whether to grant a stay. *Id.* at 434. These are: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Id.* The first two factors of the traditional standard are the most critical. *Id.* The factors have been treated as a "sliding scale", "more of one excuse less of the other." *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006).

As noted above, Zim is bound by the FMC regulations, including its definitions as to who Zim may bill for D&D charges and who is ultimately responsible for said charges. TD, by definition, it not the "ultimate consignee" responsible for these charges. In fact, the ultimate consignee is bringing a separate action against Zim within the FMC. Ancillary to this factor is that Zim may be estopped, whether collaterally or judicially, from arguing that TD is the ultimate consignee in this case, depending on the arguments presented in the action brought by the "ultimate consignee." Perhaps the most important factor in issuing this stay is that TD will be irreparably harmed absent a stay. Zim has sued TD for over $7 million. An FMC determination could rule TD is not liable for these charges. If this matter proceeds, there is a possibility of inconsistent rulings. Furthermore, as a destination agent, TD earned approximately $45/container. A $7 million lawsuit has the potential to bankrupt an entity like TD, that has a staff of four people.

A stay will not substantially injure Zim in this action. Under the FMC Charge Complaint procedures, Zim will be provided a full opportunity to respond. The FMC will either rule that TD is the proper party to bring this action against or it is not. However, since Zim knows the proper party to bring the action against, they are not harmed should this matter be ultimately dismissed. A determination by the FMC will not hamper Zim's rights to proceed against the proper party. Finally, the public interest is best served by allowing the FMC to determine this issue before it proceeds in federal court. Allowing the matter to proceed concurrently will create the possibility

of inconsistent results.  Congress enacted the NVOCC Safe Harbor[1] provision for matters such as this.

The undersigned appreciate your Honor's consideration of this letter

Respectfully submitted,

Thomas L. Tisdale

CC: Plaintiff's counsel via ECF

---

[1] The safe harbor provision is most applicable in a situation where, as here, an NVOCC like TD receives an invoice from a VOCC and passes it on to its customers. For the safe harbor provision to apply, however, OSRA 2022 requires the Commission to make a finding that the NVOCC is not otherwise responsible for the charge.  The FMC has stated that, "this is a fact-based analysis that the Commission undertakes on a case-by-case basis. If the Commission finds in a particular matter that a violation of 46 U.S.C. 41104(d)(1) has occurred and also has made the relevant finding under 46 U.S.C. 41104(e) that the NVOCC is not otherwise liable, only then is the safe harbor provision applicable." *Id.* 89 Fed. Reg. 14330, 14330-31 (Feb. 26, 2024).