**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

ZIM INTEGRATED SHIPPING SERVICES,   |
LTD.   |

                 |        Case No. 25-9492

        Plaintiff,   |

  |

v.   |

  |

TD LOGISTICS, INC.   |

  |

        Defendant.   |

---------------------------------------------------------------X

### TD LOGISTICS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY PENDING FEDERAL MARITIME COMMISSION DETERMINATION UNDER 46 U.S.C. § 41310, CHARGE COMPLAINTS AND 46 U.S.C. §41104 (e) SAFE HARBOR

Dated: May 4, 2026
      New York, NY

                            Attorneys for the Defendant,

                                 /s/ *Thomas L. Tisdale*
                            Thomas L. Tisdale
                            Tisdale & Nast Law Offices, LLC
                            Chrysler Building
                            405 Lexington Ave., 26th Floor
                            New York, NY 10174
                            Tel:    212 354 0025
                            Fax:    212 869 0067
                            *ttisdale@tisdale-law.com*

**TABLE OF CONTENTS**

**Heading**                                                                                    **Page(s)**

Introduction…………………………………………………………………………..1

Statement of Facts……………………………………………………………………4

Legal Standard……………………………………………………………………….6

Argument…………………………………………………………………………….8

I.      Zim and TDL are FMC Regulated Entities
        and Subject to FMC Regulations Governing
        D&D Billing Practices- CFR Part 541,
        Demurrage and Detention, Subpart A—
        Billing Requirements and Practices…………………………………………..8

        A.      Zim Violated FMC Regulations Governing
                D&D Billing Requirements and Practices. ………………………………..8

        B.      Primary jurisdiction doctrine…………………………………………..11

II.     A stay is necessary while the FMC
        determines issues dispositive to this case. ………………………………………..13

        A.      Likely to Succeed on the Merits. ………………………………………13

        B.      Irreparable harm. ………………………………………………………...15

        C.      Burden on non-moving parties…………………………………………...15

        D.      Public Interest…………………………………………………………16

Conclusion………………………………………………………………………….16

## TABLE OF AUTHORITIES

**Case**                                                                                    **Page(s)**

*D.L. Piazza Co. v. West Coast Line*,
    210 F.2d 947 (2d Cir. 1954)……………………………………………………..7

*Ellis v. Tribune TV Co.*,
    443 F.3d 71 (2d Cir. 2006)…. …………………………………………………...11, 12

*Golden Hill Paugussett Tribe of Indians v. Weicker*,
    39 F.3d 51 (2d Cir. 1994)…… …………………………………………….…7, 8

*In re Agent Orange Prod. Liab. Litig.*,
    804 F.2d 19 (2d Cir. 1986)… …………………………………………………..…16

*In re Golden*,
    671 B.R. 638 (Bankr. E.D.N.Y. 2025)… …………………………………………..13, 15

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)… …………………………………………………….7

*Mezu-Ndubuisi v. Univ. of Rochester*,
    No. 25-139,
    2026 WL 456740 (2d Cir. Feb. 18, 2026)… …………………………………………...12

*Mohammed v. Reno*,
    309 F.3d 95 (2d Cir. 2002)… …………………………………………………..…13

*Nken v. Holder*,
    556 U.S. 418 (2009)… ……………………………………………...…8, 13, 15, 16

*Reiter v. Cooper*,
    507 U.S. 258 (1993)… …………………………………………………….…8

*Schneiderman v. Actavis PLC*,
    787 F.3d 638 (2d Cir. 2015)… ………………………………………………...…15

*Thapa v. Gonzales*,
    460 F.3d 323 (2d Cir. 2006)… …………………………………………………..8

*Town of Oyster Bay v. Northrop Grumman Sys. Corp.*,
    No. 2:23-CV-7146 (NJC) (AYS),
    2025 WL 1434274 (E.D.N.Y. May 19, 2025) …………………………………...……11, 12

*Zima Corp. v. M.V. Roman Pazinski*,
     493 F. Supp. 268 (S.D.N.Y.),
     *aff'd sub nom.*
     *Zima Corp. v. M.*, 633 F.2d 208 (2d Cir. 1980)… ………………………………...…..7

## **Other**

*Agribusiness Holdings Limited Partnership D/B/A*
*Bridgewell Agribusiness, LLC, Claimant v.*
*Zim Integrated Shipping Services, Ltd.*,
     July 14, 2025, Docket No. 2021(I) …………………………………………………14

46 U.S.C. §§ 40101-41310 ("Shipping Act")……… ………………………………..*passim*

46 CFR Part 520…………………………………………………………………..2, 9, 14

46 CFR 541….…………………………………………………………...3, 7, 8, 9, 10, 14

89 Fed. Reg. 14336, 14330-31…………………………………………………...…10, 11

**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------X
ZIM INTEGRATED SHIPPING SERVICES,          |
LTD.                                       |
                                           |        Case No. 25-9492
                    Plaintiff,             |
                                           |
v.                                         |
                                           |
TD LOGISTICS, INC.                         |
                                           |
                    Defendant.             |
-------------------------------------------------------------------X
```

### TD LOGISTICS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY PENDING FEDERAL MARITIME COMMISSION DETERMINATION UNDER 46 U.S.C.  § 41310, CHARGE COMPLAINTS AND 46 U.S.C. §41104(e) SAFE HARBOR

TD Logistics, Inc. ("TDL" or "Defendant") submits this memorandum of law in support of its motion to stay this action pending a determination by the Federal Maritime Commission ("FMC") under 46 U.S.C. § 41310, Charge Complaints, and Safe Harbor provision 46 U.S.C. 41104(e), whether Plaintiff Zim Integrated Shipping Services, Ltd. ("Zim" or "Plaintiff") properly invoiced TDL as the party responsible to pay Zim's claim for Demurrage and Detention (D&D") subject of this litigation.

Under 46 U.S.C. § 41302(a), the FMC is empowered to investigate any conduct, fee, or charge that the FMC believes to be in violation of the Shipping Act of 1984, as amended, 46 U.S.C. §§ 40101-41310 ("Shipping Act").  As Zim is aware, in June 2022, the Ocean Shipping Reform Act of 2022 ("OSRA 2022") amended the Shipping Act of 1984, setting forth a new federal provision to challenge D&D charges entitled "Charge Complaint."  These amended provisions delegated to and authorized the FMC to promptly investigate "information concerning complaints about demurrage and detention charges assessed by a common carrier," 46 U.S.C. §§ 41310(a)-

1

(b).  If the FMC determines that a charge does not comply with §§ 41104(a) or 41102, the FMC shall, under 46 U.S.C. § 41310(c), "promptly" order the refund of charges paid or waiver of charges assessed.  If the FMC determines that a charge does not comply with §§ 41104(a) or 41102, the FMC also is authorized under 46 U.S.C. § 41310(d) to issue a civil penalty under 46 U.S.C. §§ 41107 and 41109 to the common carrier making such charge.

OSRA 2022 also provided a "Safe Harbor" provision, which allows TDL to seek a determination from the FMC that TDL is not responsible for Zim's claimed D&D charges, if the FMC determines that TDL properly passed through to the relevant shipper Zim's invoice for the same D&D charges.[1]

Here, TDL is not the proper party against which this action can be brought.  TDL was not the contractual party to Zim and, although TDL appeared in Zim's bill of lading as Consignee, TDL acted only as a notify party/destination agent for the transactions described in Plaintiff's Complaint.  Zim, as a vessel operating "ocean common carrier" (as defined by 46 U.S.C. § 40102(7) and (18)) is subject to regulation by the FMC.  TDL is also subject to FMC regulation since it is an FMC licensed Non-Vessel Operating Common Carrier ("NVOCC").[2]  As both parties are subject to FMC regulations, they are bound by the provisions and definitions promulgated by the FMC[3].  Zim should not have brought this claim against TDL since it was acting in a very

---

[1] The Safer Harbor provision found at 46 U.S.C.  § 41104 (e), provides that, "If a non-vessel operating common carrier passes through to the relevant shipper an invoice made by the ocean common carrier, and the Commission finds that the non-vessel operating common carrier is not otherwise responsible for the charge, then the ocean common carrier shall be subject to refunds or penalties pursuant to subsection (d)(1)."

[2] The FMC defines Non-Vessel-Operating Common Carrier as a "common carrier that—(A) does not operate the vessels by which the ocean transportation is provided; and (B) is a shipper in its relationship with an ocean common carrier."

[3] Zim is an FMC regulated ocean carrier, and therefore subject to the rate tariff publishing requirements governed by 46 CFR Part 520, which defines "Consignee" as the recipient of cargo from a shipper; the person to whom a transported commodity is to be delivered.  46 CFR § 520.2.

2

limited capacity as destination agent. Instead, the action should have been brought against either Zim's contractual party, the shipper, or the "ultimate consignee" as defined by the FMC at 46 CFR 541.3. As explained further herein, Zim was aware of the correct party to bring these charges against, failed to do so, and then refused to substitute TDL for them in this action. TDL anticipates Zim will argue that the D.C. Court of Appeals set aside the FMC regulation that had specified who a D&D invoice may be sent to.[4] However, the FMC made clear in a News Release, that "apart from section 541.4, the rest of the Rule remains in effect and is not impacted by the court's decision, and expected all common carriers and marine terminal operators to follow the unaffected requirements." (*See* FMC News Release, November 20, 2025, footnote 4). This meant that the FMC's definition of "Consignee" at 46 CFR 541.3 remained in effect.

The issues which give rise to the requested stay are problems of Zim's own making, by refusing to follow FMC regulations despite ample opportunity to do so. TDL understands that the ultimate consignee will be filing a formal complaint against Zim at the FMC. When filed, we will supplement this memorandum with such complaint to provide a copy to the Court. TDL has brought a Charge Complaint before the FMC against Zim for alleged violations of the Shipping Act, and FMC regulations governing D&D billing requirements and practices.[5] TDL's FMC Charge Complaint seeks FMC determination that TDL is not the correctly billed party and not responsible for the charges claimed by Zim. Zim may attempt to masquerade its SDNY action against TDL as simple breach of contract action or based on quantum meruit theory—but once

---

[4] FMC News Release, November 20, 2025: https://www.fmc.gov/articles/u-s-court-of-appeals-issues-decision-in-case-on-demurrage-and-detention-billing-practices/ (last accessed May 4, 2026)

[5] *See* Exhibit A for TDL's Charge Complaint against Zim. Exhibits that reference the Charge Complaint exhibits will be labelled as Ex. A-1, Ex. A-2, etc. Exhibit 1 contains a more detailed account of TDL's allegations against Zim for violations of the Shipping Act, however, the relevant provisions related to this motion are explained herein.

3

unmasked—Zim's case is an attempt to collect D&D charges that Congress, in passing OSRA 2022, delegated exclusively to the FMC, jurisdiction to hear all Charge Complaints filed pursuant to 46 USC § 41310.

## STATEMENT OF FACTS

The instant action was brought by Zim on November 11, 2025, alleging unpaid demurrage charges for approximately 140 shipping containers seeking damages exceeding $7 million. Zim's Complaint alleges breach of contract and quantum meruit causes of action. (ECF 1). Shenzhen Perdo International Logistics Co., Ltd ("Perdo"), an FMC foreign registered NVOCC, had a service contract with Zim, and as shipper, booked the subject shipments with Zim on behalf of Elektron and SunnySide Digital Inc., the U.S. importer of record ("Elektron-Sunnyside") pursuant to that Service Contract agreement. Elektron-Sunnyside is the ultimate consignee of the shipments described in the Complaint.

Perdo engaged TDL to function as a destination agent/notify party for the shipments booked under Zim Master bills of lading numbers: ZIMUSNH7771953, ZIMUSNH7771954, ZIMUSNH7771955, ZIMUSNH7771956, ZIMUSNH7771957, ZIMUSNH7771958, and ZIMUSNH7771959 (collectively the "Zim MBLs"). (*See* Exhibit A-1). These bills of lading identify Perdo as the "Shipper" and TDL as the "Consignee" and "Notify Party." TDL's only role for the subject shipments was to function as a destination agent/notify party, and to issue an Arrival Notice to the ultimate consignee, Sunnyside-Elektron, earning a fee of $50.00 for each shipment. (*See* Exhibit A-2). TDL had no other role in this transaction nor was it involved in the negotiations between Zim and Perdo regarding their service contract. Zim knew throughout that the ultimate consignee was Elektron-Sunnyside. TDL did not book the subject shipments with Zim, was not the service contract party with Zim, and did not agree to accept and pay Zim for the demurrage

4

and detention ("D&D") charges claimed by Zim. As will be explained further below, these were the responsibilities of Perdo and/or Sunnyside-Elektron. Zim's claim for approximately $7 million in D&D charges stems from alleged Customs and Border Protection (CBP) transfer exams and CBP holds, in which TDL had no involvement.

On September 20, 2025, Zim's shipper, Perdo, corresponded with Zim USA advising that because Zim had already released its customer's shipments, that Zim should issue its detailed demurrage invoice with charges accrued up to September 30th. (*See* Exhibit A-4). Instead of sending the invoice to Perdo, Zim sent the $7,056,140.00 demurrage invoice to TDL. As permitted by FMC rules and regulations, TDL immediately passed the invoice to the ultimate consignee Elektron-Sunnyside. On September 30, 2025, Elektron-Sunnyside responded to TDL stating it retained legal counsel to challenge Zim's invoice charges. (*See* Exhibit A-4).

On October 1, 2025, TDL wrote Zim inquiring why Zim did not collect the demurrage charges before releasing the containers and advised Zim that it believed it was not responsible for Zim's alleged D&D charges. (*Id.*). Shortly thereafter, counsel for Elektron-Sunnyside contacted Zim and inquired about the charges.

On October 27, 2025, Zim wrote Elektron-Sunnyside's counsel stating that Zim's past due invoices were not related to Zim's demurrage case which Zim had already addressed with TDL. (*Id.*). Two days later, on October 29, 2025, TDL advised Zim that Elektron disputed all Zim's D&D charges.

On October 29, 2025, counsel for Electron-Sunnyside advised Zim that it had filed a dispute with Zim for the improperly assessed $7,056,140 in demurrage fees against Elektron-Sunnyside, the Importer of Record, in violation of the Shipping Act. On November 16, 2025, TDL again wrote Zim advising them that the ultimate consignee disputed Zim's D&D charges and

requested a status.  (*See* Exhibit A-4).  Zim responded it would proceed against TDL.  Elektron-Sunnyside and Zim could not come to terms and Zim initiated suit against TDL, not Elektron-Sunnyside.  On November 20, 2025, Zim served TDL with a Summons and Complaint seeking $7,050,260.00 as D&D damages.

Zim had full knowledge and understanding that TDL was not the service contract party with Zim and was not the ultimate consignee as defined by the FMC.  After Zim served TDL with Zim's New York Action, Elektron agreed to substitute itself as the real party in interest in Zim's New York action, because it had already disputed Zim's claimed D&D charges.  Zim refused.

On April 14, 2026, TDL filed a Charge Complaint against Zim alleging various violations of the Shipping Act.  (*See* Exhibit A).  On April 22, 2026, the FMC determined that the Charge Complaint had sufficient detail to proceed.  (*See* Exhibit B).

Considering the two ongoing FMC proceedings, TDL respectfully requests a stay of this action pending the FMC's investigation of TDL's Charge Complaint.  The FMC Chage Complaint investigation will determine if TDL is the proper billed party and if so, whether TDL is the proper party to pay the D&D charges.  FMC laws and regulations governing D&D charges apply to both Zim and TDL, and therefore, under the doctrine of primary jurisdiction, the FMC has exclusive statutory delegated authority to hear all Charge Complaints.  Furthermore, the factors governing a stay are met and all other equitable considerations including inconsistency of results and invocations of the doctrines, collateral estoppel and judicial estoppel weigh in favor of staying this proceeding.

**LEGAL STANDARD**

In the Southern District of New York, a motion to stay proceedings pending an FMC determination is evaluated under the court's inherent power to control its docket, often guided by

the doctrine of primary jurisdiction.  The core inquiry is whether the interests of justice and judicial economy are served by waiting for the agency's expertise on issues within its specialized competence.  *Zima Corp. v. M.V. Roman Pazinski*, 493 F. Supp. 268 (S.D.N.Y.), *aff'd sub nom. Zima Corp. v. M.*, 633 F.2d 208 (2d Cir. 1980) (considering stay for FMC status determination); *Landis v. N. Am. Co.*, 299 U.S. 248 (1936) (establishing the foundational inherent power to stay). When a court has jurisdiction over a matter, but the action requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body (like the FMC), the court may stay the case.  *Id.*

Both Zim and TDL are governed by the FMC regulations and laws.  Zim is a vessel operating "ocean common carrier" as that term is defined by 46 U.S.C. § 40102(7) and (18), it is subject to regulation by the FMC.  TDL is also subject to FMC regulation because it is an FMC licensed Non-Vessel Operating Common Carrier ("NVOCC"), as defined under the Shipping Act, and operating under FMC Organization and OTI License No. 034143.  As both parties are subject to FMC regulations, Zim is aware that the proper party against which this action may be brought is the "ultimate consignee" as defined by the FMC at 46 CFR 541.3.  The FMC is in the best position to determine whether Zim's invoices were proper, and if it correctly followed the detention and demurrage billing practices implemented by the FMC over a multi-year-long process, prescribed by Congress, and whether TDL was the proper party to bill.

The FMC has exclusive primary jurisdiction over disputes concerning the Shipping Act, which requires the Court to dismiss or stay this proceeding pending resolution by the FMC.  *D.L. Piazza Co. v. West Coast Line*, 210 F.2d 947, 948 (2d Cir. 1954).  Courts exercise the primary jurisdiction doctrine "where a claim is originally cognizable in the courts, but enforcement of the claim requires, or is materially aided by, the resolution of threshold issues, usually of a factual

7

nature, which are placed within the special competence of the administrative body." *Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 58-59 (2d Cir. 1994). When a court determines the doctrine of primary jurisdiction applies, it may either retain jurisdiction and stay the matter pending review by the agency or dismiss the action without prejudice. *Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993).

A stay is appropriate in this action to await an FMC determination of TDL's Charge Complaint. A stay is a mechanism of judicial discretion where its issuance turns upon the circumstances of each case. *Nken v. Holder*, 556 U.S. 418, 433 (2009). TDL's bears the burden of establishing circumstances justifying the Court granting a stay. *Id.* Courts look at four factors when determining whether to grant a stay: (1) Whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) Whether the applicant will be irreparably injured absent a stay; (3) Whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) Where the public interest lies. *Id.* at 434. The first two factors of the traditional standard are the most critical. *Id.* The factors have been treated as a "sliding scale", "more of one excuse less of the other." *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006).

## **ARGUMENT**

**I.     Zim and TDL are FMC Regulated Entities and Subject to FMC Regulations Governing D&D Billing Practices- CFR Part 541, Demurrage and Detention, Subpart A—Billing Requirements and Practices**

**A.     Zim Violated FMC Regulations Governing D&D Billing Requirements and Practices.**

As stated above, both Zim and TDL are governed by the rules and regulations established by the FMC. The proper party against which this action may be brought against is Zim's contractual party, here, Perdo, or the "ultimate consignee" as defined by the FMC at 46 CFR 541.3.

8

As noted *supra*, Zim is not only aware of the ultimate consignee's identity but was contacted by them to resolve this dispute and, alternatively, to be substituted as the proper party defendant. Zim refused. TDL has filed a Charge Complaint against Zim for similar violations. TDL also understands the "ultimate consignee" Elektron-Sunnyside intends to file shortly a formal FMC Complaint against Zim for alleged violations of the Shipping Act, and FMC's D&D billing requirements. TDL will provide the Court with a copy of Elektron's FMC complaint against Zim after its filed at the FMC. FMC Part 541, Demurrage and Detention, Subpart A—Billing Requirements and Practices 46 CFR Part 541 govern demurrage and detention ("D&D") billing requirements and practices. Its primary purpose is meant to stop D&D invoices from being sent to parties who have not negotiated contract terms with the billing party. TDL is one such party. It did not contract with Zim or request its transportation services. TDL's role was limited to that of a destination agent, to issuing an arrival notice to the ultimate consignee, on behalf of Zim's shipper and contract party. While TDL was listed as a "consignee" under the bills of lading, it was not the "ultimate consignee" responsible for the subject invoices as the FMC defines "Consignee" at 46 CFR 541.3 and 46 CFR 520.2. Simply listing a party as a consignee on a bill of lading does not make it so.

Under 46 U.S.C. § 41302(a), the FMC is empowered to investigate any conduct, fee, or charge that the FMC believes to be in violation of the Shipping Act of 1984, as amended, 46 U.S.C. §§ 40101-41310 (Shipping Act). In June 2022, the Ocean Shipping Reform Act of 2022 ("OSRA 2022") amended the Shipping Act of 1984, setting forth a new federal procedure enabling a party to challenge D&D charges entitled "Charge Complaint." These amended provisions delegated to and authorized the FMC to promptly investigate "information concerning complaints about demurrage and detention charges assessed by a common carrier," 46 U.S.C. §§ 41310(a)-(b). If

9

the FMC determines that a charge does not comply with §§ 41104(a) or 41102, the FMC shall, under 46 U.S. C. § 41310(c), "promptly" order the refund of charges paid or waiver of charges assessed.  If the FMC determines that a charge does not comply with §§ 41104(a) or 41102, the FMC is authorized under 46 U.S.C. § 41310(d) to issue a civil penalty under 46 U.S.C. §§ 41107 and 41109 to the common carrier making such charge.

Under OSRA 2022, the FMC must determine whether Zim 's invoices were proper and whether Zim correctly followed the detention and demurrage billing practices developed by the FMC.  *See* Demurrage and Detention Billing Requirements, 89 Fed. Reg. 14330, 14330-31 (Feb. 26, 2024).  Zim violated FMC regulations at Part 541 by not providing an additional 30 days to allow the ultimate consignee to continue to dispute Zim's D&D charges.  Instead, Zim filed this complaint.  *See* 46 CFR 541.7 (c)-(d).  Zim's disregard for the regulatory process and its suit against TDL constitutes a Shipping Act violation 46 U.S.C. § 41102(d)(2)(B).

Zim, on the other hand, seeks to ignore the FMC's jurisdiction and its regulations.  Instead, Zim relies on its extraordinarily broad bill of lading definition of "Merchant" to impose D&D liability on a mere destination agent, TDL.

Under OSRA, TDL is authorized to file a Charge Complaint against Zim pursuant to § 41310 and § 41104(e) (NVOCC Safe Harbor)[6] and allege violations of 46 U.S.C. §§ 41104(a) or 41102.  TDL has filed its Charge Complaint.  (Exhibit A).  The Safe Harbor provides TDL with a statutory avenue to shift the burden to Zim to prove whether the chained D&D charges are properly billed to TDL and whether TDL is responsible for the charges claimed by Zim.  In response to Commenters on the applicability of the Safe Harbor provision under 46 U.S.C. 41104 (e), the FMC

---

[6] TDL notes that the NVOCC Safe Harbor provision, available only to NVOs is new and appears to be widely used in practice by NVOCCs.

stated during its Rulemaking on the Final Rule on Demurrage and Detention invoice requirements

that:

> The commenter misinterprets the language of 46 U.S.C. 41104(e). The statute does not exempt NVOCCs from the demurrage and detention invoice requirements of 46 U.S.C. 41104(d)(2). It merely shifts responsibility for refunds or penalties under 46 U.S.C. 41104(d)(1) in the certain, specified scenario from the NVOCC to the ocean common carrier. The safe harbor provision is most applicable in a situation where an NVOCC receives an invoice from a VOCC and passes it on to its customers. **In order for the safe harbor provision to apply, however, <u>OSRA 2022 requires the Commission to make a finding that the non-vessel-operating common carrier is not otherwise responsible for the charge</u>.** The Commission declines to make a general finding as part of this rulemaking that all NVOCCs are "not otherwise responsible" for errors in invoices they pass through. Rather, this is a fact-based analysis that the Commission undertakes on a case-by- case basis. If the Commission finds in a particular matter that a violation of 46 U.S.C. 41104(d)(1) has occurred and also has made the relevant finding under 46 U.S.C. 41104(e) that the NVOCC is not otherwise liable, only then is the safe harbor provision applicable.

> *See* Demurrage and Detention Billing Requirements, 89 Fed. Reg. 14336, 14330-31 (Feb. 26, 2024).  (Emphasis added).

Under the FMC's Safe Harbor provision, the FMC will investigate TDL's assertions to

determine if Zim violated the alleged provisions of the Shipping Act, and if TDL is responsible for

Zim's claimed D&D charges.

**B.      Primary jurisdiction doctrine**

While there is no strict test to determine if the doctrine of primary jurisdiction demands the

court dismiss or stay proceedings pending a resolution before the appropriate administrative body,

the Second Circuit applies the "*Ellis* factors" as a guide.  *See Ellis v. Tribune TV Co.*, 443 F.3d 71

(2d Cir. 2006).  The *Ellis* factors ask: (1) Whether the question at issue is within the conventional

experience of judges or whether it involves technical or policy considerations within the agency's

particular field of expertise; (2) Whether the question at issue is particularly within the agency's

discretion; (3) Whether there exists a substantial danger of inconsistent rulings; and (4) Whether a

prior application to the agency has been made. *Town of Oyster Bay v. Northrop Grumman Sys. Corp.*, No. 2:23-CV-7146 (NJC) (AYS), 2025 WL 1434274, at *25 (E.D.N.Y. May 19, 2025). Although this doctrine is discretionary, it supplements the stay factors that are discussed in more detail below.

The primary jurisdiction doctrine is a "relatively narrow" exception "concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties by allocating initial decision-making responsibility between courts and agencies." *Id.* The doctrine of primary jurisdiction allows a district court to stay an action pending an administrative agency's resolution of factual issues underlying the plaintiff's claims where doing so "would promote the resolution of technical questions of fact[ ] through the agency's specialized expertise" or "would promote consistency and uniformity." *Mezu-Ndubuisi v. Univ. of Rochester*, No. 25-139, 2026 WL 456740, at *1 (2d Cir. Feb. 18, 2026).

Here, all four *Ellis* factors are met. First, as noted above, the question at issue involves a variety of provisions and rules drafted by the FMC, some of which have only been implemented in the past few years. Second, since the issue involves violations of the Shipping Act, that is well within the jurisdiction and discretion of the FMC. Third, as the Charge Complaint has now been accepted by the FMC and an investigation is under way, there is the possibility of inconsistent rulings should this matter not be stayed. Finally, TDL's Charge Compliant has been filed and accepted by the FMC.

**II.      A stay is necessary while the FMC determines issues dispositive to this case.**

Courts look at four factors when determining whether to grant a stay. *Nken v. Holder*, 556 U.S. 418, 434 (2009).[7]  These are: (1) Whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) Whether the applicant will be irreparably injured absent a stay; (3) Whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) Where the public interest lies. *Id.*  A court must "consider all four factors, and assess the strengths and weaknesses of each, because the degree to which a factor is dispositive varies with the other factors' strengths." *In re Golden*, 671 B.R. 638, 651–52 (Bankr. E.D.N.Y. 2025).  The moving party must show satisfactory evidence on all four factors to succeed in its request. *Id.*

**A.      Likely to Succeed on the Merits**

The chance of success on the merits must be "better than negligible" and more than a mere "possibility." *In re Golden*, 671 B.R. 638, 651 (Bankr. E.D.N.Y. 2025).  It is well-established in this circuit that a party seeking a stay "may satisfy the first factor –'likelihood of success' – by showing that there are 'serious questions' going to the merits of the dispute and that the balance of hardships tips decidedly in its favor." *Id.*  Ultimately, the necessary "level" or "degree" of possibility of success will vary according to the court's assessment of the other stay factors. *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (cleaned up).  Here the relevant questions are whether Zim violated various FMC provisions including incorrectly invoicing TDL, incorrectly billing TDL, and refusing to abide by the FMC's rules and regulations for D&D charges.  TDL's chance of success is high.  TDL is relying on the plain language of the FMC rules and regulations

---

[7] While these factors are often discussed in terms of stays pending appeal, they are utilized in other circumstances and closely align with factors for issuing preliminary injunctions.

that have been drafted and interpreted by the FMC for years.  TDL's Charge Complaint against Zim has now been accepted by the FMC and an investigation is to follow.

Zim violated 46 U.S.C. § 41104(a)(14) by invoicing TDL as the incorrect party and disregarding the FMC regulations providing an additional 30 days when a dispute notice is timely provided.  Zim incorrectly billed TDL and refused to bill its service contract NVOCC shipper, Perdo or the ultimate consignee, Sunnyside-Elektron.  Zim also refused to replace TDL with the ultimate consignee.  The FMC defines "Consignee" in two places:  at 46 CFR 541.3 ("Consignee" means the ultimate recipient of the cargo; the person to whom final delivery of the cargo is to be made), and at 46 CFR 520.2 (means the recipient of cargo from a shipper; the person to whom a transported commodity is to be delivered). TDL does not meet these definitions.  Zim knows this term and has relied on it in a previous case with the FMC.  *See Agribusiness Holdings Limited Partnership D/B/A Bridgewell Agribusiness, LLC, Claimant v. Zim Integrated Shipping Services, Ltd.*, July 14, 2025, Docket No. 2021(I) (Zim arguing that the shipper and the party it was in contractual privity is the more appropriate party to receive demurrage and detention invoices, as recognized by the Commission).

Zim also violated the plain language of 46 CFR § 541.7(c) which requires the billing party common carrier to provide an additional 30 days when the billed party is an NVOCC and notifies the billing party that the NVOCC's billed party disputes the charges.  Instead of allowing an additional 30 days, Zim proceeded with this suit.

TDL is likely to succeed in its Charge Complaint against Zim because Zim plainly violated multiple FMC rules and regulations and refuses to adhere to their plain language and definitions.

14

**B.    Irreparable harm**

Under the second *Nken* factor, an applicant seeking a stay pending appeal must show that "the applicant will be irreparably injured absent a stay." *In re Golden*, 671 B.R. at 652–53 (citing *Nken*, 556 U.S. at 434). The Second Circuit has held that "[i]rreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015). Zim is claiming damages in the amount over $7,000,000.00. TDL is an organization consisting of 5 employees. If TDL is required to proceed and satisfy Zim's demand, the company will become insolvent and likely seek bankruptcy relief. (*See* Declaration of Jeffrey Wu). This is not a matter of monetary value but instead would cause a company to close and discharge its employees. TDL would be rendered insolvent. The harm to TDL if this case is not stayed would be irreparable.

**C.    Burden on non-moving parties**

Under the third *Nken* factor, the applicant for a stay must establish that "issuance of the stay will [not] substantially injure the other parties interested in the proceeding." *Nken*, 556 U.S. at 434. "In other words, the moving party must show that the balance of harms tips in favor of granting the stay." *In re Golden*, 671 B.R. at 653 (internal citation omitted). Zim is the only other party interested in this proceeding. The issuance of a stay will not harm Zim. Zim has already initiated suit against TDL and paused the statute of limitations. Unlike TDL, Zim is a multi-billion-dollar container ship carrier. It does not suffer any harm by staying these proceedings until the FMC makes its determination. Furthermore, since the Charge Complaint has been accepted by the FMC, Zim will be able to afford an opportunity to be heard and provide information to the FMC. Finally, Zim, like TDL, is bound by FMC rules and regulations. It cannot be prejudiced by having to participate in an investigation before an agency which governs it.

**D.      Public Interest**

Finally, under the fourth *Nken* factor, the applicant must demonstrate that the public interest will not be adversely affected if a stay pending appeal is granted.  *Nken*, 556 U.S. at 434.  This factor of the test balances the goals of efficient case administration.  *In re Agent Orange Prod. Liab. Litig.*, 804 F.2d 19, 20 (2d Cir. 1986).  The public interest and judicial efficiency will be met by staying this matter.  As noted *supra*, TDL's Charge Complaint alleges various violations to FMC rules and regulations.  The FMC determination turns on the underlying issues of this case, mainly whether Zim was able to initiate its suit against TDL at all.  As the Charge Complaint has now been accepted, a stay will prevent inconsistent rulings and will assist with issues relating to collateral and judicial estoppel.  An FMC ruling will be dispositive on this case.  Should this matter proceed and then the FMC rules on such matters in TDL's favor, the resources of the parties and this Court will have been wasted.  Furthermore, Zim initiated this suit against TDL because the true consignee disputed 's D&D charges.  Against FMC rules, Zim has retaliated against the notify party because the proper party defendant challenged the invoices.

## CONCLUSION

Based on the foregoing reasons, this Court should grant a stay pending FMC determination on TDL's Charge Complaint.

16

Dated: May 4, 2026
       New York, NY

                                        Attorneys for the Defendant,

                                               /s/ *Thomas L. Tisdale*
                                        Thomas L. Tisdale
                                        Tisdale & Nast Law Offices, LLC
                                        Chrysler Building
                                        405 Lexington Ave., 26th Floor
                                        New York, NY 10174
                                        Tel:    212 354 0025
                                        Fax:    212 869 0067
                                        *ttisdale@tisdale-law.com*

17

## CERTIFICATION OF SERVICE

I hereby certify that on May 4, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's CM/ECF system.


/s/
<hr>
Jamison T. Jedziniak

## **WORD CERTIFICATION**

This pleading was created using Microsoft Word 365.  The applicable word count is 5,176.


_____/s/_____
Jamison T. Jedziniak